1  MORGAN, LEWIS & BOCKIUS LLP
   BARBARA J. MILLER (SBN 167223)
2  barbara.miller@morganlewis.com
   JENNIFER L. BRADFORD (SBN 203871)
3  jbradford@morganlewis.com
   SARAH N. DRECHSLER (SBN 223820)
4  sdrechsler@morganlewis.com
   5 Park Plaza, Suite 1750
5  Irvine, CA  92614
   Tel:   949.399.7000
6  Fax:  949.399.7001

7  Attorneys for Defendant
   BEST BUY STORES, L.P.

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  TIM CAMPBELL, individually, and on          Case No. CV-12-07794 JAK (SH)
    behalf of members of the general public
13  similarly situated,                         **MEMORANDUM OF POINTS AND
                                                AUTHORITIES IN SUPPORT OF
14           Plaintiff,                         DEFENDANT BEST BUY STORES,
                                                L.P.'S OPPOSITION TO
15  vs.                                         PLAINTIFF'S MOTION FOR
                                                CLASS CERTIFICATION**
16  BEST BUY STORES, L.P., a Virginia
    Limited Partnership; and DOES 1 through     Date:        September 9, 2013
17  100, inclusive,                             Time:        8:30 a.m.
                                                Ctrm.:       750
18           Defendants.

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................1
II.   FACTUAL BACKGROUND ..................................................................2
      A.   Routing and Scheduling Prior to October 2008 ...................................3
      B.   Routing and Scheduling after October 2008 (FMS) ...........................4
      C.   Timekeeping to October 2010 – the "Campbell" System ...................5
      D.   Timekeeping and Payroll After October 2010 – TLC .........................5
      E.   BB Policies Comply with California Law ...........................................6
            1.   Techs Know That Policies Prohibit Off-the Clock Work ..........6
            2.   Meal Break Policies .................................................................6
            3.   Rest Break Policies and Practices ............................................7
            4.   Commute from Final Stop to Home ..........................................8
      F.   Performance Metrics .........................................................................9
      G.   Plaintiff's Claims Are Inherently Individualized ..............................10
            1.   Inherently Individual Timekeeping Practices .........................10
            2.   Individual Meal and Rest Break Practices ..............................12
            3.   Individual Experiences Regarding Commute Time .................14
III.  PLAINTIFF CANNOT SATISFY RULE 23 REQUIREMENTS ...............14
      A.   Plaintiff's Proposed Classes Are Not Ascertainable .........................15
      B.   Plaintiff Cannot Establish Rule 23(a)(2) Commonality ....................15
      C.   Plaintiff Cannot Establish Rule 23(b)(3) Predominance of
            Common Issues ................................................................................17
            1.   Individual Issues Predominate on Plaintiff's Off-the-
                 Clock Claim .............................................................................18
            2.   Individual Issues Predominate on Plaintiff's Meal Break
                 Claim ......................................................................................18
            3.   Individual Issues Predominate on Plaintiff's Rest Break
                 Claim ......................................................................................20
            4.   Individual Issues Predominate on Plaintiff's Commute
                 Claim ......................................................................................21
            5.   Plaintiff's "Labor Budget" or Incentives Theory Is Fatally
                 Flawed ....................................................................................23
            6.   Cell Phone Practices Cannot Support Certification .................23
      D.   Plaintiff Cannot Establish Rule 23(b)(3) Superiority .........................24

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

i

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alcantar v. Hobart Serv.,*
  2012 WL 5946129 (C.D. Cal. 2012)..........................................17, 21

*Alcantar v. Hobart Serv.,*
  2012 WL 6539547 (2012)...............................................................21

*American Express Co. v. Italian Colors Rest.,*
  2013 WL 3064410 (U.S. 2013) ...................................................1, 14

*Brinker Rest. Corp. v. Superior Ct.,*
  53 Cal. 4th 1004 (2012) ...........................................................passim

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
  155 F.3d 331 (4th Cir. 1998) ...........................................................25

*Brown v. Federal Express Corp.,*
  249 F.R.D. 580 (C.D. Cal. 2008) .............................................18, 23

*Bryant v. Service Corp. Int'l,*
  2011 WL 855815 (N.D. Cal. 2011) .................................................22

*Dailey v. Sears, Roebuck & Co.,*
  214 Cal. App. 4th 974 (2013) .........................................................19

*Deitz v. Comcast Corp.,*
  2007 WL 2015440 (N.D. Cal. 2007).................................................15

*Drenckhahn v. Costco Wholesale Corp.,*
  2011 WL 3754659 (C.D. Cal. 2011)..................................................20

*Forrand v. Federal Express Corp.,*
  2009 WL 648966 (C.D. Cal. 2009)....................................................25

*Gen. Tel. Co. of Sw. v. Falcon,*
  457 U.S. 147 (1982) ......................................................................14

*Goldberg v. Kelly,*
  397 U.S. 254 (1970) ......................................................................25

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

ii

*Goldsby v. Adecco, Inc.*,
   2009 WL 262216 (N.D. Cal. 2009) ...................................................25

*Gomez v. Lincare, Inc.*
   173 Cal. App. 4th 508 (2009).........................................................24

*Gonzalez v. OfficeMax N. Am.*,
   2012 WL 5473764 (C.D. Cal. 2012)...........................................19, 20

*Hadjavi v. CVS Pharmacy, Inc.*,
   2011 WL 3240763 (C.D. Cal. 2011) ................................................18

*Hanni v. Am. Airlines, Inc.*,
   2010 WL 289297 (N.D. Cal. 2010) .................................................15

*Kenny v. Supercuts, Inc.*,
   252 F.R.D. 641 (N.D. Cal. 2008).....................................................23

*Kimoto v. McDonald's Corp.*,
   2008 WL 4690536 (C.D. Cal. 2008)................................................19

*Kline v. Coldwell, Banker & Co.*,
   508 F.2d 226 (9th Cir. 1974)...........................................................25

*Koike v. Starbucks Corp.*,
   2008 WL 7796650 (N.D. Cal. 2008), *aff'd* 378 Fed. Appx. 659 (9th Cir.
   2010) .............................................................................................18, 23

*Koike v. Starbucks Corp.*,
   378 Fed. Appx. 659 (9th Cir. 2010) .................................................23

*Mateo v. V.F. Corp.*,
   2009 WL 3561539 (N.D. Cal. 2009).................................................23

*Mazur v. eBay Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009).....................................................15

*Mendoza v. Home Depot, USA, Inc.*,
   2010 WL 424679 (C.D. Cal. 2010)...................................................25

*Mike v. Safeco Ins. Co. of Am.*,
   223 F.R.D. 50 (D. Conn. 2004) .......................................................15

*Morillion v. Royal Packing Co.*,
   22 Cal. 4th 575 (2000) ...............................................................18, 21

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

iii

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

*Nelson v. Southern Cal. Gas Co.*,
 2013 WL 2358670 (Cal.App. 2013) ................................................................24

*Nguyen v. Baxter Healthcare Corp.*,
 2011 WL 6018284 (C.D. Cal. 2011) ................................................................19

*Ordonez v. Radio Shack, Inc.*,
 2013 WL 210223 (C.D. Cal. 2013) .................................................. 18, 19, 20, 23

*Overton v. Walt Disney Co.*,
 136 Cal. App. 4th 263 (2006) ................................................................ 16, 21, 22

*Pryor v. Aerotek Scientific, LLC*,
 278 F.R.D. 516 (C.D. Cal. 2011) ....................................................................18

*Purnell v. Sunrise Senior Living Mgmt., Inc.*,
 2012 WL 1951487 (C.D. Cal. 2012) ................................................................19

*Reece v. UniTrin Auto & Home Ins. Co.*,
 2013 WL 245452 (N.D. Cal. 2013) ..................................................................20

*Rodriguez v. Gates*,
 2002 WL 1162675 (C.D. Cal. 2002) ................................................................15

*Rutti v. Lojack Corp.*,
 596 F.3d 1046 (9th Cir. 2010) ................................................................... 16, 21

*Salazar v. Avis Budget Grp., Inc.*,
 251 F.R.D. 529 (S.D. Cal. 2008) ....................................................................19

*Santos v. Vitas Healthcare Corp. of Cal.*,
 2011 WL 2803370 (Cal. Ct. App. 2011) ...........................................................22

*Seckler v. Kindred Healthcare Operating Grp., Inc.*,
 2013 WL 812656 (C.D. Cal. 2013) .................................................................19

*Sepulveda v. Wal-Mart Stores, Inc.*,
 237 F.R.D. 229 (C.D. Cal. 2006), rev'd .............................................................15

*Ugas v. H & R Block Enter., LLC*,
 2012 WL 5230297 (C.D. Cal. 2012) ................................................................19

*Velasquez v. HSBC Fin. Corp.*,
 266 F.R.D. 424 (N.D. Cal. 2010) .............................................................. 18, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

iv

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) .................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)....................................................... 15, 16, 25

*Washington v. Joe's Crab Shack*,
    271 F.R.D. 629 (N.D. Cal. 2010)................................................ 18, 19

*White v. Starbucks Corp.*,
    497 F. Supp. 2d 1080 (N.D. Cal. 2007)...............................................18

*Wren v. RGIS Inventory Specialists*,
    256 F.R.D. 180 (N.D. Cal. 2009)......................................................19

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ............................................ 14, 18, 25

### OTHER AUTHORITIES

Fed. R. Civ. P. 23..............................................................................passim

Wage Order 7-2001 § 12(A) ..................................................................20

Wage Order 7-2001 § 2(K) .................................................................. 18

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

# I.    **INTRODUCTION**

According to the Supreme Court, "[Rule 23] imposes stringent requirements for certification that in practice *exclude most claims*." *American Express Co. v. Italian Colors Rest.*, 2013 WL 3064410, at *4 (U.S. 2013) (emphasis added). Plaintiff, Tim Campbell does not bring one of those rare claims against his former employer, Best Buy Stores, L.P. ("BB"), warranting certification. Rather, Plaintiff avers inherently individual claims for off-the-clock work performed, if at all, in violation of BB policies, work during self-reported meal breaks, and pay for commuting home. Each of these claims demands an individualized deep dive into how Plaintiff worked each day, and none can be resolved as to all employees Plaintiff seeks to represent on a classwide basis. Thus, Plaintiff cannot satisfy the commonality, predominance, or superiority requirements of Rule 23.

Plaintiff worked as a technician who repaired appliances at customer homes. He kept a detailed transcript of how he spent each day on a "Route Sheet" which BB used to pay him. He alleges that despite receiving overtime on most days, he did not report all of his work time. Also, he claims that despite recording meal breaks, he sometimes worked during his meal break. He denies telling anyone that he worked more time than he reported or during his breaks and confirms that "[y]ou'd have to go through [Route Sheets] one by one" to figure out when he worked during a meal that he recorded. Evidence Appendix ("EA") 401-1 (Campbell Deposition ("Dep.") 73:15-25). BB's evidence, including 21 technician statements, demonstrates that BB policies did not cause widespread, common, or routine off-the-clock work or work during meal breaks. Thus, Plaintiff's off-the-clock claims cannot be resolved by common evidence on a classwide basis. Further, individual issues, including whether each technician worked time not reported on any particular day, the circumstances causing such work, and whether a supervisor knew of the work, overwhelm individual ones. Thus, Plaintiff has not satisfied the mandates of either Rule 23(a)(2) or 23(b)(3) with respect to his off-the-clock claims.

Plaintiff also contends that he was not authorized and permitted to take rest breaks or provided with meal breaks (although he recorded one every day). BB's evidence,

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

1

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

however, elucidates that if Plaintiff could not take rest or meal breaks, he was unique. Many technicians were able to and did take meal and rest breaks. Moreover, they felt no pressure to answer phones, drive, check email, or otherwise work during their breaks. Plaintiff's claim is particular to him; it cannot be resolved through common evidence on a classwide basis. Hence, Rule 23(a)(2) commonality fails. Also, Plaintiff cannot show predominate common issues as required by Rule 23(b)(3) because individual issues, including whether a technician failed to take a break on a particular day, the circumstances motivating the failure, and whether a manager knew of the failure, eclipse common ones.

Next, Plaintiff asserts that BB should have paid him for his short commute home from his last stop, because, he professes, BB required him to take his BB van home and prohibited personal errands. Yet, BB evidence shows that many technicians knew that they did not need to take their BB vans home and did so for their own convenience, and they could and did run personal errands on their way home. Whether BB should have paid for commute turns on whether BB mandated that technicians take vans home or allowed them to run errands. These issues cannot be resolved on a classwide basis. Also, any liability assessment would require a person-by-person evaluation of motive for taking a van home and whether the technician ran personal errands. Thus, Plaintiff cannot satisfy the requirements of either Rule 23(a)(2) or Rule 23(b)(3) with respect to this claim.

Finally, Plaintiff neglects to describe any manageable plan to conduct a trial of the disparate individual issues raised by his claims on a common basis. Thus, a class action is not superior as required by Rule 23(b)(3).

## II.   **FACTUAL BACKGROUND**

BB sells appliances and T.V.s, and when a repair is needed, the customer can call BB to get it fixed. BB provides repair services through different channels including in-home service. Before mid-2012, technicians who visited customers to repair product had one of three titles: in-home appliance repair; in-home premium appliance repair; and in-home CE repair (repaired T.V.s). In July 2012, positions changed and now "Dual Techs" repair both appliances and T.V.s. EA 119 ¶ 4 (Greene Declaration ("Dec.")). This Motion references

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

2

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

California employees holding one of these positions as "Techs."  Before mid-2012, Techs reported to leads, who reported one of three in-home managers, J. Chavez, R. Charles, or J. Saad.  EA 118 ¶3 (Greene Dec.).  In mid-2012, BB eliminated leads, increased the in-home managers, and created a new Field Service Market Manager (FSMM) so that Techs reported to in-home managers who reported to a FSMM.  EA 119 ¶4 (Greene Dec.).

### A.   Routing and Scheduling Prior to October 2008

Techs drive BB vans, and they can elect to take the vans home or leave them at a BB location.  EA 128 ¶ 30 (Greene Dec.).  Techs begin their work day at the van location.  Before October 2008, managers assigned work orders ("Orders") to Techs.  Each Tech serviced an area based on zip codes.  Very early, BB emailed each Tech an Excel workbook, called "eNARDA," containing the Orders for the day, generally 8 or fewer.  EA 112 ¶ 4 (Fox Dec.); EA 123 ¶ 17 (Greene Dec.).  The eNARDA included a spreadsheet for each Order ("Order Sheet") and a spreadsheet for the Tech to record all daily activities (the "Route Sheet").  *Id.*; *see, e.g.,* EA 467 (Campbell Dep., Ex 4).  Techs reviewed the Orders, checked email, scheduled their route, and called customers to provide a four-hour window for the repair visit.  After completing this route "prep" work, Techs drove to their first customer.  EA 120 ¶ 8 (Greene Dec.); EA 381 (Campbell Dep. 19:13-21:6).

BB expected Techs to call customers between 7:00 am and 9:00 am.  EA 715 (R. Chavez Dep. 135:24-136:4).  Lead R. Chavez had no expectation as to how long route prep should take, but if it took more than two hours, he might ask why.  EA 715 (*Id.* 135:3-14).  Also, he never expected Techs to depart for or arrive at their first customer by 8:00 am.  EA 715 (*Id.* 135:16-20).  Plaintiff asserts that route prep took him about two hours.  EA 398 (Campbell Dep. 52:10-21).  If true, he prepped slowly, as prep takes other Techs from 15 to 60 minutes depending on the day.  *See* Summary of Evidence ("SE") 1.

On their Route Sheets, Techs recorded the start and end time for each daily activity, including when they started and ended route prep in a row titled, "Call First & Route Prep."  *See, e.g.,* EA 384 (Campbell Dep. 22:23-23:6, Ex. 4) (showing prep from 7:00 am to 9:10 am).  On average, Plaintiff reported 1.33 hours of daily prep starting at 7:00 am.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

EA 1170 ¶4 (Miller Dec., Ex. B).  He recorded more than an hour of prep on 174 out of 214 days, at least two hours on 18 days, and more than 3 hours on 9/29/2008.  *Id.*  Thus, Plaintiff's own records belie his claim that BB limited prep time to one hour (Mtn. at 10).

Techs estimated when they arrived at and left each customer and noted such time in the "Time In" and "Time Out" Route Sheet columns.  SE 3.  eNARDA calculated a "Drive Time" as the difference between the Time Out for one Order and the Time In for the next.  EA 121 ¶12 (Greene Dec.).  The "Drive Time" is the gap time between Orders; *it is not the time a Tech spent driving*.  EA 121 ¶ 12 (Greene Dec.).  Techs entered when they started and ended meal breaks.  SE 4.  ***The Route Sheet did not automatically record meal breaks***. SE 6.[1]  Techs logged time spent visiting the UPS store, completing all activities, and completing paperwork ("Complete Route & Send").  SE 5.  The Route Sheet is a Tech's transcript of when he/she started and ended each activity.  EA 718 (R. Chavez Dep. 144:16-25); EA 120 ¶ 10 (Greene Dec.).  Techs accurately recorded the time they started and ended their days and meal breaks, but were not as careful with customer visit times.  SE 7.

## B.    Routing and Scheduling after October 2008 (FMS)

In October of 2008, BB implemented a new electronic scheduling and routing system called FMS.  Techs gave their schedules to their leads, and managers would enter periods that Techs were available for Orders.  Times would be "blocked" for things like PTO, van maintenance, training, etc.  Techs make an initial 30 minute "diag" visit where the Tech may fix the problem or order parts and schedule a follow-up visit.  EA 112 ¶ 2 (Fox Dec.).  Until recently, Techs decided the length of the follow-up visit.  EA 113 ¶ 8 (Fox Dec.).  FMS scheduled Orders based on the Tech designated Order time, the Order location, and traffic patterns.  EA 112 ¶5 (Fox Dec.)  FMS also factors in a 30 minute meal break.  EA 120 ¶ 9 (Greene Dec.); EA 719 (R. Chavez 150:23-152:2).

In the morning, Techs log into FMS and acknowledge their routes.  FMS schedules Orders in two, four hour windows and provides a suggested route (including a meal), but

---

[1] Plaintiff's claim that meal breaks are automatically recorded (Mtn. at 12:1-4) is false.  If Techs failed to take meals, breaks are not recorded for them. EA 127 ¶ 27(Greene Dec.).

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

4

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

Techs may rearrange the route. EA 719 (R. Chavez Dep. 150:23-152:2). Techs call each customer to give a two-hour arrival window and then run their routes. EA 120 ¶ 9 (Greene Dec.). Currently, Techs are generally scheduled between 4-8 Orders per day. SE 8.

With FMS, Order Sheets were eliminated from eNARDA, as Techs entered Order data in FMS directly. eNARDA became only the one-page Route Sheet where Techs track their activities, including meal breaks, and the time spent on each activity from when they begin to when they end their workdays. *See, e.g.,* EA 124 ¶ 19 (Greene Dec., Ex. A).

### C.    Timekeeping to October 2010 – the "Campbell" System

Through October 2010, Techs emailed Route Sheets to an administrative assistant, who entered start and end times for the day and for meal breaks directly from Route Sheets to BB's "Campbell" payroll system. EA 123 ¶ 15 (Greene Dec.). A less than 30 minute meal or a late meal triggered a premium payment. EA 192 ¶ 5, Ex. A (Kropp Dec.).

Plaintiff was paid overtime every period that he worked full-time, for an average of about 10.84 hours, with a high of 25.5 hours and a low of 2.5 hours. EA 1168 ¶3 (Miller Dec., Ex. A). No limit on overtime existed. EA 684-15 (Charles Dep. 94:3-95:4).

### D.    Timekeeping and Payroll After October 2010 – TLC

In October 2010, Techs started using TLC, a web-based timekeeping system. First thing, Techs log into TLC and clock in. EA 122 ¶ 13 (Greene Dec.). Techs access TLC to clock out and in for meals. *Id.* When they complete all work, the final thing they do is clock out. *Id.* If Techs do not record a 30-minute meal break before the first five hours, they receive a premium. EA 192¶ 5, Ex. A (Kropp Dec.). Techs review their time and make any final corrections. *Id.* If they believe their time is not accurate, they may edit it. They then confirm that they have reviewed and accurately submitted their time via a pop-up (*id.*):



### E.   BB Policies Comply with California Law
#### 1.   Techs Know That Policies Prohibit Off-the Clock Work

Before starting employment, Techs receive and sign a form stating, "[E]mployees must be PUNCHED IN AND 'ON THE CLOCK' WHEN WORKING."  EA 124 ¶ 20 (Greene Dec., Ex. D).  BB's "Time Records, Rest Breaks and Meal Periods" policy provides:

> If you are an hourly employee, you must record the hours that you work each day so we know how much to pay you.  It's simple . . . clock in when you start working; clock out when you stop . . . .

EA 125 ¶ 21, Ex. E, F, G (Greene Dec.).  The policy prohibits Plaintiff's alleged practices:

> Hourly employees are not allowed to work "off the clock."  Ever.  This means no working unless you are recording your time. . . . [N]o helping others for a minute after clocking out, no exceptions! . . .

> **Show integrity**  No cheating is allowed on time records.  Ever.  For any reason.  This means you can't fake your time record . . . or pressure someone else to over- or under-report their time.  If you are asked to do this or see it happening to someone else, call the eGO HR Support Center right away.  *Id.*

BB emphasizes its policies prohibiting off-the-clock meetings in meetings and through emails.  Plaintiff knew that BB absolutely prohibited working while clocked out.  EA 399 (Campbell Dep. 58:8-11).  Plaintiff's witnesses ("PWs") knew that they would violate BB policy by working off-the-clock.  SE 10.  Other Techs confirm that it was against policy to work time and not report it (SE 11), and they verify that they received frequent reminders to record all time that they work (*see* SE 12).  Daley explains that his manager told him that he should never cheat himself and should always record any time that he worked.  EA 33 ¶ 12 (Daley Dec.).

#### 2.   Meal Break Policies

Techs must take an uninterrupted, 30-minute meal break if they work longer than five hours.  EA 126 ¶¶ 25, 26 (Greene Dec., Ex. K).  "The policy is about making sure that you take a meal break and within the times that you're required to do so."  EA 750 (Greene Dep. 62:11-18).  Techs must take a second meal if they work more than 10 hours.  EA 127 ¶ 28 (Greene Dec.).  BB communicates this policies in training, via email, and in meetings.  SE 15.  If Techs miss a meal break or start it late, they receive a one-hour of pay premium.  *Id.* at ¶27.  Since 2008, BB has paid Techs more than $27,000 in premiums.  EA 197 ¶ 4 (Nelson Dec.).

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

6

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

Before FMS, Techs scheduled their meals to start in the first five hours.  *See, e.g.,* EA 416 (Campbell Dep. 126:8-127:1) ("I would decide to take my lunch when I had time . . . to obey company policy to have a 30-minute lunch showing on my time card before five hours of work").  Plaintiff would schedule his route in the morning to include the 30 minute lunch.  *Id.* Tech received many emails reminding them of the lunch policy.  *See, e.g.,* EA 32 ¶ 6 ( Daley Dec.).  If Techs needed to take a meal during a service call, that is what they were supposed to do.  EA 1045-7 (Saad Dep. 85:25-86:14).  For their safety, Techs were required to take breaks, and "this was communicated via all channels possible."  EA 697-4 (J.Chavez Dep. 96:6-20).

FMS suggests a meal break, but Techs can take the break when they want, as long as it starts in the first five hours.  SE 14.   Plaintiff and all Techs knew they were supposed to take a 30-minute meal before the fifth hour of work.  *See, e.g.,* EA 402 (Campbell Dep. 74:5-17, 126:8-13, 129:23-130:15 ) ("you must show a half-hour lunch before-or within the five-hour time frame"); *see also* SE 15.  Techs may interrupt a customer visit and take a meal break, if nearing the five hour mark.  SE 16.  Plaintiff confirmed that he recorded when he actually took a meal (EA 397 (Campbell Dep. 51:1-25)), and stated, "well, I mean, I'm sure I could have" taken a meal break he says he missed.  EA 403 (Campbell Dep. 76:3-74:13).

Plaintiff wrongly asserts that BB policies require that cell phones remain on during meal breaks (Mtn. at 11:9-11).[2]  Techs, however, are not on-the-clock during meal breaks, and they are not required to keep phones on or check their emails during breaks.  Chavez told his Techs that "when you're on break, don't answer the phone, don't answer e-mails."  EA 703 (J. Chavez Dep. 136:12-23).  Techs verify that they were not required to keep their phones on, answer their phones, or check email during breaks.  SE 17.  Moreover, Techs confirm that they have been told not to drive and they do not drive during their breaks.  *See, e.g.,* SE 18.

### 3.  **Rest Break Policies and Practices**

BB's rest break policy is for Techs to take at least two 15-minute rest breaks, one in

---

[2] Plaintiff cites a policy stating that cell phones should be on while "on the clock."  (Mtn., Note 68.)  Techs are not "on the clock" during meal breaks.  In the cited J. Chavez testimony, he stated that Techs should keep phones on *while working*; the testimony says nothing about keeping a phone on while not working during a meal or rest.

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

7

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

the morning and one in the afternoon.  If they work longer than 10 hours, they should take a third.  EA 126, 127 ¶¶ 25-28 (Greene Dec.).  Techs confirm that they are authorized and permitted to take rest breaks and generally take them.  SE 19.  Plaintiff misleadingly cites J. Chavez to suggest that Techs would take their rest breaks while driving between calls.  J. Chavez, however, denied that Techs took them while driving (if "they're driving the van, I don't think they're resting").  He explained, "I think you know they have to be at a stop.  They stop by the side of the road and have a cigarette or something like that.  I mean, that's their rest break."  EA 702 (J. Chavez Dep. 135:21-136:5).  He testified that Techs were told, "When you're on break, don't answer the phone, don't answer e-mails. . . . Obviously, we didn't want them to do [calls and emails], because they were at break or lunch."  EA 703 (136:8-23).

J. Chavez conducted ride-alongs to make sure Techs were taking rests.  EA 698 (J. Chavez Dep. 102:18-103:2).  Further, both J. Chavez and Saad told Techs that (1) rest breaks should be taken, (2) not to answer their phones or emails on break, and (3) not to drive during breaks.  SE 20.  Techs verify that they are not required to answer phones, check email, or drive during rest breaks.  SE 21.  They further confirm that they rarely get calls at all during the day at all, let alone on their breaks.  SE 22.

### 4.   Commute from Final Stop to Home

Techs need not take their BB van home; taking the van home is entirely voluntary.  EA 251, 269, 274 (Pucely Dec., Exs. C, D, E), EA 128 ¶ 30 (Green Dec.).  Techs can leave their van at a BB store overnight.  SE 27.  Some Techs do *not* take their vans home.  SE 28.  Others know they can leave their vans at a store, but elect to take them home for their own convenience.  SE 29.

Techs may run personal errands on their way home.  *See* EA 251, 269, 274 (Pucely Dec., Exs. C, D, E) (If the van is taken home it may be used to make incidental errands to and from the workplace.).  In February 2009, Plaintiff acknowledged receipt of a Drive and Van Policy that permitted such incidental errands.  EA 617, 629 (Campbell Dep., Exs. 15, 20).  Many Techs do run personal errands on their way home.  SE 30.  For example, while PW Wong declared that personal use of his van was prohibited, he testified that he could

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

8

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

and did stop by Target on the way home to get personal items.  EA 1154 (136:14-23).

Prior to June of 2010, the first 30-minutes of time a Tech recorded in the "Drive Home" portion of the Route Sheet would compute as not-paid.  EA 128 ¶ 31 (Greene Dec.).  Many Techs, however, were compensated for their commute home during this period either because their manager included it when time was entered into Campbell or because Techs included their drive time home as some other type of compensable time such as "UPS Visit," or "Complete Route and Send."  *See, e.g.,* SE 31.  After June of 2010, BB paid Techs for commuting home in BB vans.  EA 128 ¶ 31 (Greene Dec.).

### F.    Performance Metrics

BB has many metrics for evaluating the performance of in-home service teams.  Metrics change, but they generally include turn time (time from a customer call to when the repair is complete); customer satisfaction; redo percentage; completes per day; parts costs per closed order; Defcons (Orders where a problem exists with the paperwork); and labor.  The existence of such metrics, however, does not constitute a policy mandating off-the-clock work or work during meals and rests.  If a team is out of the normal range on an important metric, BB perceives an opportunity for improvement through training and coaching.  EA 872 (Kanta Dep. 51:20-53:11).  When a Tech has performance issues, a manager may provide training and coaching, perhaps through a ride along.  SE 32.  Techs were not reprimanded for working too much overtime per se; they were reprimanded for the performance issue causing too much overtime.  SE 33.

Managers do not manage overtime through artificially cutting short a Tech's work day.  Rather, they manage through load balancing, training, and getting Techs what they need to perform their jobs better.  As to load balancing, Charles explains that leads could decide when a Tech should call regarding overtime:  "Some leads asked their [Techs] to call in to update them on where they were during the day, if they were going to get a certain amount of overtime.  It could have been an hour or it could have been two hours . . . It was at the lead's discretion."  EA 685 (95:6-96:6).  The purpose of the call was not to limit overtime, as "the overtime was going to be given anyway" (EA 717-1 (R. Chavez

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

9

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

Dep. 140:7-22)); the goal was to enable the manager to move work to another Tech, if possible. EA 704-5 (J. Chavez Dep. 188:12-189:15); EA 1043 (Saad Dep. 49:1-13). If a Tech was working a large amount of overtime in comparison to peers for the same amount of Orders, a manager would not deny overtime. Instead, a manager might ride along and provide training or support. EA 1044 (Saad Dep. 50:4-18); EA 688-3 (Charles Dep. 137:4-13) (when repairs take too long, he would ask, "what held you back?").

Contrary to the Motion at 9:8-9, BB does not require that Techs complete calls by 4:00 pm. Even Plaintiff admits that there was no time that he was supposed to complete his calls,[3] and Techs often report leaving their last call after 4:00 pm. EA 1164 ¶6 (Miller Dec., Ex. F). In fact, BB trains Techs on letting a customer know that they are running late. EA 721-5 (R. Chavez Dep. 164:14-165:7); EA 837 (J. Chavez Dep. 243:17-25).

### G.   Plaintiff's Claims Are Inherently Individualized

To determine whether any individual Tech worked time that he/she did not record, worked during a recorded meal break, or could not take a rest break requires an in-depth analysis of each Tech's individual Route Sheet for each separate day. Even then, an individual inquiry is required as to whether anyone in management should have known the Tech was working. Moreover, Plaintiff and his witnesses cannot determine whether they are owed time on any day, even when confronted with a Route Sheet.

### 1.   Inherently Individual Timekeeping Practices

Plaintiff argues that Techs were not permitted to spend more than an hour on prep time, and thus worked prep time off-the-clock. Plaintiff's Route Sheets, however, show that Plaintiff logged an average of 1.33 hours per day of prep time and leaving his home after 8:00 am on 80% of his work days (and after 9:00 on many days). Similarly, other of PWs regularly reported far more than an hour of prep time. SE 34. Hayzelden regularly clocked in before 7:00 am. EA 822-834 (Hayzelden Dep., Ex. 37). Tillis admitted that he could and did clock in before 7:00 am. EA 1094 (82:10-23). Huynh denied off-the-clock

---

[3] "Was there a time that I was supposed to complete them? No. No. . . . they didn't say, you know, you need to be done with this route by 4:00." EA 404-1 (Campbell Dep. 78:25-79:2).

Morgan, Lewis & Bockius LLP
Attorneys at Law
Irvine

DB2/ 24196162.3

1   work in the morning.  EA 840 (20:22-21:1).  Many other Techs always had sufficient time
2   to prepare their routes in the morning and always recorded all prep time.  *See* SE 38.

3       Plaintiff also argues that BB prohibited or refused to allow overtime when it was
4   needed resulting in off-the-clock work on a common, classwide basis.  Yet, the evidence
5   does not support this assertion.  PWs admit that they received overtime pay.  SE 35.  In
6   fact, Plaintiff received overtime every full pay period he worked.  Bufete does not recall
7   any occasion where a request for overtime was denied.  EA 347 (62:15-63:3).  Huynh
8   denies any uncompensated work other than his commute home.  EA 843 (23:7-10).  ***Many
9   other Techs never worked off-the-clock*** and were never instructed to refrain from
10  recording work time.  SE 39.

11      Further, the evidence shows that PWs cannot estimate how much or whether they
12  worked off-the-clock on any particular day.  SE 36.  They agree that the amount of off-
13  the-clock work, if any, varied each day.  SE 37.  Alatorre and Wong cannot estimate their
14  off-the-clock work.  EA 311 (Alatorre Dep. 55:10-21); EA 1100 (Wong Dep. 23:14-
15  25:13).  Tillis has no idea how he would figure out how much off-the-clock time he
16  worked.  EA 1060 (22:13-23:17).  Huynh denies working off-the-clock other than during
17  his commute.  EA 837 (17:9-19:4).  Martinez cannot remember whether he worked off-
18  the-clock at all during the third quarter of 2011.  EA 1035 (123:19-124:5).

19      In addition, evidence shows that even if certain Techs worked off-the-clock, BB
20  had no reason to know about it.  Plaintiff never told anyone that he worked time he did not
21  record.  EA 401 (Campbell Dep. 65:22-24, 44:25-46:1).  Alatorre and Bufete never told a
22  manager about off-the-clock work time.  EA 324 (Alatorre Dep. 104:8-15); EA 362
23  (Bufete Dep. 96:15-97:3, 98:13-20).  Tillis states that his supervisor did not know that he
24  worked off-the-clock.  EA 1068 (33:1-8, 45:16-25).  Wong's managers would have no
25  way of knowing of his off-the-clock work.  EA 1126 (Wong Dep. 64:2-65:24).

26      Finally, the evidence shows BB must be afforded the opportunity to cross-examine
27  any Tech who claims off-the-clock work.  At depositions, PWs disputed many of their
28  declaration statements.  As examples, Huynh retracted his statement that he would be

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

11

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

reprimanded if he was late to any calls (EA 854 (61:13-62:1)) and he clarified that, contrary to his statement, he did receive premiums when he worked through breaks.  EA 856 (65:22-66:12).  Contrary to his statement, Alatorre did not always have at least eight customers a day (EA 325 (111:10-112:21)), did report and receive pay for overtime work (EA 312 (56:12-57:6)), and his drive home could be as little as 10 minutes (his statement said a minimum of 30 min.).  EA 302 (42:1-7, 49:6-15, 5:20-51:11). To the extent Bufete's declaration embraces 2010 to 2011, it is wrong; he never worked off-the-clock and always took rest breaks and meal breaks during this period.  EA 369 (103:21-105:15).  Martinez clarified that he ***never*** worked off-the-clock when he was supervised by Tim and Dave, illuminating the individual nature of off-the-clock work (EA 989 (30:6-19)), that even under other supervisors there may have been weeks when did not work off-the-clock (EA 1021 (97:2-15)), and that, contrary to his statement, he was not required to clock out at 3:30 pm (EA 1014 (90:8-91:15)).  Contrary to his statement, Tillis received pay for all of the overtime he worked in some pay periods (EA 1091 (74:18-75:5)), was ***not*** reprimanded for requesting overtime (EA 1080 (53:10-54:6, 69:17-21)), and some days could complete his work in 8 hours.  EA 1058 (15:22-16:11).  Wong testified that, contrary to his declaration, he did not work off-the-clock every evening, and he would have no way to tell from his Route Sheet whether he did.  EA 1147 (104:13-106:14).

Thus, there is no question that any trial would require an individualized assessment of each Tech's individual experience to make any kind of liability decision.

## 2.   Individual Meal and Rest Break Practices

Evidence from Plaintiff, his witnesses, and other Techs illustrate the individual nature of meal and rest break practices.  Techs receive a premium when they do not record a full meal break.  SE 40.  Thus, whether BB is liable to any particular Tech for not providing a meal that the Tech recorded requires an individual, day-by-day assessment of whether (a) the Tech worked during a meal break, (b) the Tech was coerced by BB to work during the break, and (c) any manager had reason to know of such work.  Liability for rest break violations requires an individual assessment of whether (a) a Tech took rest

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

12

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

1    breaks on a particular day, and (b) if not, was the Tech coerced by BB to forego such

2    rests.  These questions cannot be answered on a common basis through common evidence.

3        Many Techs *never* drive, work, answer phones, or check email during reported

4    meal breaks; they always take uninterrupted breaks during the period they report as a

5    meal.  SE 42.  Some Techs occasionally answer the phone during a break, but whether

6    they answer is entirely voluntary, and they take their full meal break time.  SE 43.

7        Techs verify not only that they are authorized and permitted to take rest breaks, they

8    take them.  SE 44.  Further, during rest breaks, many Techs either turn off their phones or

9    do not answer them, and they do not check email.  SE 45.  Some Techs know that they can

10   take rest breaks, are encouraged to do so, know they need not answer phones, and confirm

11   that work does not prevent rests, but sometimes they elect not to take full rest breaks.  SE

12   46.  For example, Zook knows he can take 15 minute breaks, but sometimes elects to take

13   4-5 shorter smoke breaks instead.  EA 197 ¶ 7 (Zook Dec.).

14       Plaintiff offers no idea about how he would prove the existence of classwide break

15   violations on any particular day through common evidence.  Rather, when confronted with

16   his Route and Order Sheets, Plaintiff could not determine whether he worked during the

17   meal breaks he recorded.  SE 47.  Plaintiff explained that the only way he could tell

18   whether he worked during a meal is to go through each route sheet.  EA 392-2 (Campbell

19   Dep. 41:1-14, 73:15-25).  PW Wong stated that during his meal, he sometimes bought

20   lunch, sometimes took the full half hour all five days in a week; he just cannot remember.

21   EA 1117 (52:12-57:1).  PW Hayzelden testified that a Tech's ability to take breaks

22   ***"depends on your boss and your lead" and has varied over time***.  EA 785 (87:16-25).

23       Also, whether BB had reason to know that Techs could not take a break requires a

24   Tech specific, day-by-day analysis.  For example, Plaintiff, Tillis, and Wong admit they

25   never told a manager that they worked during time a meal. EA 401 (Campbell Dep. 65:22-

26   24 ); EA 1077 (Tillis Dep. 46:18-47 ); EA 1127 (Wong Dep. 65:25-66:9 ); *see also* SE 13.

27       Testimony from PWs establishes the inaccuracy of many PW declarations (*see* SE

28   36, 48, 49), illustrating BB's need to individually examine each Tech making a break

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

13

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

DB2/ 24196162.3

period claim.  As examples, Huyhn never answered the phone when customers called.  EA 858 (69:16-70:13).  Alatorre retracted his statement that he was reprimanded for failing to answer his phone during a meal, explaining that one time he took a call from his manager during his meal, and he was told that he should NOT answer his phone on his break.  EA 332 (132:12-133:17, 148:19-49:19).  Bufete was never told to keep his phone on during breaks.  EA 373 (110:13-16).  Huyhn did not answer his phone when customers called and denied any requirement that he do so.  EA 858 (69:16-17:13).  Contrary to his declaration, Tillis does not remember a customer calling him on his phone (EA 1071 (36:11-22)), if his manager called, he did not need to answer (EA 1072 (38:11-22)), he could have turned off his phone during breaks (EA 1089 (72:3-13)), and he did take full meal and rest breaks some days (EA 1091 (74:1-4, 75:22-76:20)).  Contrary to his statement, Wong could have shut his phone off during his beaks (EA 1132 (73:24-75:7, 96:9-16, 97:5-23)).

### 3.    Individual Experiences Regarding Commute Time

Plaintiff argues that he was required to take his BB van home, prohibited from running errands, and not paid for his travel home.  BB's evidence illustrates the individual nature of each assertion.  Techs confirm that they did not need to take their BB vans home and did so for their convenience.  *See* SE 29.  Some Techs did not take their vans home. SE 28.  Many Techs understood that they could run incidental errands on their way home. *See* SE 30; EA 1154 (Wong Dep. 136:14-23).  Further, many Techs describe the types of errands they ran including picking up groceries, pizza, medicine, etc.  *See* SE 30.  Some Techs reported their commute as a compensable type of time so that the time was paid. *See* SE 31.  Finally, managers sometimes made sure commute time was paid.  *See* SE 31.

## III.   PLAINTIFF CANNOT SATISFY RULE 23 REQUIREMENTS

"[Rule 23] imposes stringent requirements for certification that in practice exclude most claims." *American Express*, 2013 WL 3064410, at *4.  Plaintiff bears a heavy burden of showing that his proposed class meets all Rule 23(a) and one Rule 23(b) requirements.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  "[A]ctual, not presumed, conformance" with class action requirements is indispensable.  *Gen. Tel. Co. of Sw. v. Falcon*,

457 U.S. 147, 160 (1982).  Thus, a plaintiff must "prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  "Rule 23 does not set forth a mere pleading standard;" rather, certification is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.*; *see also Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 233 (C.D. Cal. 2006), rev'd in part on other grounds, 275 Fed. Appx. 672 (9th Cir. 2008) (stating that the trial court must conduct an "intense factual investigation" and "rigorous analysis" to determine whether Rule 23 is satisfied).

### A.   Plaintiff's Proposed Classes Are Not Ascertainable

Plaintiff must prove that an ascertainable class exists. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009).  "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, at *9 (N.D. Cal. 2010).  By defining a class as those whose rights were violated, a plaintiff creates a threshold inquiry, and "[w]here a threshold inquiry is necessary to determine class membership, the benefits to proceeding as a class action are eviscerated." *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 54 (D. Conn. 2004); *see also Rodriguez v. Gates*, 2002 WL 1162675, at *8-*9 (C.D. Cal. 2002); *Deitz v. Comcast Corp.*, 2007 WL 2015440, at *8 (N.D. Cal. 2007).  Here, two of Plaintiff's proposed subclasses – the Meal and Rest Break Subclass and the Off-the-Clock Drive Time Subclass – are defined as persons whose rights have been violated.  Plaintiff's Motion should be denied as to these subclasses because they are not ascertainable.

### B.   Plaintiff Cannot Establish Rule 23(a)(2) Commonality

Rule 23(a)(2) demands that Plaintiff establish the existence questions of law or fact common to the class by offering "significant proof" that the questions will resolve a significant aspect of the putative class members' individual claims on a classwide basis. *Dukes*, 131 S. Ct. at 2553.  Raising questions is not enough; Plaintiff must show that the questions can be answered through common proof on a classwide basis:

   Commonality requires the plaintiff to demonstrate that the class members "have

Morgan, Lewis
& Bockius LLP
Attorneys at Law
Irvine

DB2/ 24196162.3

15

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

1  suffered the same injury." . . . Their claims must depend upon a common contention .
2  . . of such a nature that is capable of ***classwide resolution*** – which means that the
3  determination of its truth or falsity will resolve an issue that is central to the validity
   of each one of the claims in one stroke. . . . "What matters to class certification . . . is
4  not the raising of common 'questions' – even in droves – but, rather the capacity of a
   classwide proceeding to generate ***common answers*** apt to drive the resolution of the
5  litigation."

6  *Id.* at 2551 (emphasis added*).*  Thus, commonality requires that common evidence can establish

7  liability as to ***all*** putative class members.  In *Dukes*, for example, the plaintiffs failed to prove

8  the "glue holding the alleged reasons for [the decisions at issue]" making it "impossible to say

9  that examination of all the class members' claims for relief will produce a ***common answer*** to

10 the crucial question why was I disavored."  *Dukes*, 131 S. Ct. at 2552.

11     Plaintiff cannot establish commonality under the standard articulated in *Dukes*.  Plaintiff

12 raises four broad questions:  (1) whether BB so controlled commute time home to make it

13 compensable; (2) whether BB's productivity metrics along with scheduling and routing

14 constraints resulted in routine off-the-clock work; (3) whether cell phone policies denied Techs

15 meal and rest breaks; and (4) whether routing constraints and productivity incentives prevented

16 Techs from taking rest breaks and the meal breaks that they reported taking.  BB's evidence

17 compels the conclusion that these questions they cannot be answered through common

18 evidence as to all Techs on a classwide basis.

19     Whether BB controlled Tech commute time home turns individual issues including

20 whether BB required each Tech to take the van home and whether the Tech was permitted to run

21 personal errands during the commute.  *See discussion infra,* Section II, E, 3; *Rutti v. Lojack*

22 *Corp.*, 596 F.3d 1046 (9th Cir. 2010); *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263 (2006).

23 Evidence shows that (1) BB's policy states that taking a van home is voluntary; (*See e.g.,* EA

24 251); (2) many Techs know that they could leave their van at a BB store (SE 29); (3) many

25 Techs do not take their vans home (SE 28); (4) BB's policy states that Techs can run errands on

26 their commute (*see e.g.,* EA 251); and (5) many Techs confirm that they can and do run personal

27 errands on their way home.  SE 30.  Thus, Plaintiff cannot show that all Techs should have been

28 paid for commute time home based on a classwide basis, defeating Rule 23(a)(2) commonality.

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

16

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

*See, e.g., Alcantar v. Hobart Serv.*, 2012 WL 5946129, at \*3-\*4 (C.D. Cal. 2012).

Whether BB's productivity metrics along with scheduling and routing constraints resulted in routine off-the-clock work cannot be answered on a common basis as to all class members. Many Techs affirm that they ***never*** worked off-the-clock. *See* SE 39. Many Techs accurately reported all of their work time and knew that BB prohibited off-the-clock work. *See* SE 7, 10, 11. Moreover, even PWs cannot estimate when or how much time they spent working off-the-clock (*see* SE 36) and conceded that entire long periods may have existed when they did ***not*** work off-the-clock at all (EA 1035 (Martinez Dep. 123:19-124:4)). Thus, whether Techs worked off-the-clock cannot be answered on a common basis defeating commonality.

Whether cell phone policies denied Techs meal and rest breaks cannot be answered on a common basis. Managers told Techs not to answer phones, drive, or otherwise work during meal and rest breaks. SE 17, 20. Moreover, Techs confirm that they were not required to keep phones on during breaks, and many turned them off. SE 21. Many Techs never returned calls, checked emails, or drove during meal and rest breaks. SE 42. Some did return calls, but it was voluntary, and they knew that they did not need to. SE 43. Thus, whether phone practices denied Techs meal and rest breaks cannot be answered on a common basis.

Finally, the evidence reveals that no common answer exists to whether performance and routing demands deprived Techs of breaks. Many Techs took meal breaks at the times they reported taking them. SE 7. Further, many Techs always took rest breaks. SE 19, 44. Some Techs knew they could take rest breaks, but sometimes elected not to. SE 46. Thus, productivity demands cannot provide the "glue" necessary to establish commonality under Rule 23(a)(2).

None of the questions raised by Plaintiff can be answered on a classwide basis through common proof. Thus, Plaintiff has not satisfied the commonality requirement of Rule 23(a)(2).

## C. Plaintiff Cannot Establish Rule 23(b)(3) Predominance of Common Issues

Rule 23(b)(3) requires a plaintiff to prove that issues common to the class predominate over issues unique to class members. The inquiry focuses on the relationship between common and individual issues and "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

17

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

(9th Cir. 2009).  Certification is inappropriate if, "the main issues in a case require the separate adjudication of each class member's individual claim."  *Zinser*, 253 F.3d at 1189.

<h3 style="text-align:center">1.  <u>Individual Issues Predominate on Plaintiff's Off-the-Clock Claim</u></h3>

California defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work."  Wage Order 7-2001 § 2(K).  An employer is only liable for off-the-clock work if it knew, or should have known, an employee performed such work.  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 585 (2000); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1083 (N.D. Cal. 2007) (holding that to prevail, the plaintiff must prove the employer "had actual or constructive knowledge of his alleged off-the-clock work").  To establish liability, each Tech would need to individually show that he/she worked unpaid time ***and*** that the manager knew about the unpaid work.  *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1051-52 (2012).

Where, as here, policies prohibit off-the-clock work, certification is inappropriate because individual issues necessarily predominate.  *See id.* at 1052 (holding that in the absence of a uniform, company-wide policy, proof of liability is individualized); *Ordonez v. Radio Shack, Inc.*, 2013 WL 210223, at *8 (C.D. Cal. 2013); *Pryor v. Aerotek Scientific*, *LLC*, 278 F.R.D. 516, 532-33 (C.D. Cal. 2011); *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 640 (N.D. Cal. 2010).[4]  Any liability finding as to any particular Tech requires a day-by-day, Route Sheet-by-Sheet analysis of:  (a) whether a Tech worked time he/she did not record; (b) if so, why did the Tech not record all of his/her time; and (3) whether a manager or supervisor knew the Tech worked time he/she did not record.  These individual issues vastly outweigh any common ones.

<h3 style="text-align:center">2.  <u>Individual Issues Predominate on Plaintiff's Meal Break Claim</u></h3>

Employers must allow employees to take meal breaks, but they need not force employees to take them or ensure they are taken.  "[T]o assert a meal break claim, the employee must show that he was *forced to forego* his meal breaks as opposed to merely showing that he did not take

---

[4] *See also Hadjavi v. CVS Pharmacy, Inc.*, 2011 WL 3240763, at *8-*9 (C.D. Cal. 2011); *Koike v. Starbucks Corp.*, 2008 WL 7796650, at *6 (N.D. Cal. 2008), *aff'd* 378 Fed. Appx. 659 (9th Cir. 2010); *Velasquez v. HSBC Fin. Corp.*, 266 F.R.D. 424, 428 (N.D. Cal. 2010); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 582-83 (C.D. Cal. 2008).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

DB2/ 24196162.3

them . . . ."  *Nguyen v. Baxter Healthcare Corp.*, 2011 WL 6018284, at *5 (C.D. Cal. 2011) (emphasis in original); *see also Brinker*, 53 Cal. 4th at 1034 (holding that an employer must relieve the employee of duty, but need not ensure that the employee does not work).  To prevail on a meal break claim, employees must show that they were ***not*** free to take meals or that they were discouraged from doing so.  *Brinker*, 53 Cal. 4th at 1040; *Dailey v. Sears, Roebuck & Co.*, 214 Cal. App. 4th 974, 1000-02 (2013) (affirming certification denial as plaintiff failed to show that employer prevented meal break); *Gonzalez v. OfficeMax N. Am.*, 2012 WL 5473764, at *5 (C.D. Cal. 2012) (denying certification on grounds that common issues predominate ***only if*** employees can commonly show they were forced to forgo meals).

Courts routinely deny certification of meal break claims where no common policy denies meal breaks on a class basis.  *See, e.g., Purnell v. Sunrise Senior Living Mgmt., Inc.*, 2012 WL 1951487, at *8 (C.D. Cal. 2012); *Joe's Crab Shack,* 271 F.R.D. at 641 (denying certification as because "an individualized inquiry will be required to determine whether any employee failed to take a meal break because he/she was too busy . . . ."); *Kimoto v. McDonald's Corp.*, 2008 WL 4690536, at *7 (C.D. Cal. 2008)*; Salazar v. Avis Budget Grp., Inc.*, 251 F.R.D. 529, 533 (S.D. Cal. 2008); *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 208 (N.D. Cal. 2009).  If no common evidence establishes a uniform policy preventing employees from taking meal breaks, certification is not proper.  *Ordonez*, 2013 WL 210223, at *8 (holding that numerous possibilities as to why employees may have missed a meal renders claim incapable of classwide resolution); *Seckler v. Kindred Healthcare Operating Grp., Inc.*, 2013 WL 812656, at *9 (C.D. Cal. 2013); *Gonzalez*, 2012 WL 5473764, at *5 (holding that "[why] any particular employee missed any particular break requires, ineluctably, individualized fact finding").

Relevant certification questions are (1) did a particular Tech work during a meal that he/she recorded; and (2) if so, was it because the Tech had no opportunity to take the recorded meal or because he/she chose to work.  *Ugas v. H & R Block Enter., LLC*, 2012 WL 5230297, at *5 (C.D. Cal. 2012).  These questions can only be answered on an individual basis.  Techs knew that they were required to take meal breaks (*see* SE 15) and verify that they took the breaks they recorded.  SE 7.  Techs deny being told to answer phones during meal breaks (*see* SE 17), did not answer phones or check email during meal breaks (*see* SE 42), did not drive during meals (*see* SE 42), and did not work during meals (*see* SE 42).  Further, not even Plaintiff and his

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

19

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

witnesses know which days they believe they worked during recorded meals.  *See* SE 47, 48.

Adjudicating Plaintiff's meal break claims would require hundreds of mini-trials on the specifics of each Tech's individual, day-by-day Route Sheets, and these individual issues dwarf any common ones.  Thus, Plaintiff cannot establish that common issues predominate.

### 3.   <u>Individual Issues Predominate on Plaintiff's Rest Break Claim</u>

Rest break claims are inherently individualized, because an employer need only "authorize and permit" a rest break.  *See* Wage Order 7-2001 § 12(A).  The employer need not ensure that rest breaks are taken.  *Brinker*, 53 Cal. 4th at 1004.  To succeed on a rest break claim, "[a]n employee must show that the employer ***prevented*** the employee from taking breaks; mere proof of knowledge that the employee was forgoing breaks is insufficient."  *Reece v. UniTrin Auto & Home Ins. Co.*, 2013 WL 245452, at *5 (N.D. Cal. 2013).  In *Reece*, the court granted summary judgment for the employer despite plaintiff's argument the work day structure made it impossible to take rest breaks, because plaintiff failed to provide evidence that the employer actually prevented such breaks.  *Id.* at *6.  Thus, a court must examine the individual reasons for an employee not taking a rest break to determine whether any violation occurred.  *See, e.g., Drenckhahn v. Costco Wholesale Corp.*, 2011 WL 3754659, at *3 (C.D. Cal. 2011).  Where the evidence shows different experiences among employees regarding rest break practices, individual issues predominate and class certification is improper.  *Ordonez*, 2013 WL 210223, at *10-*12.  Similarly, certification is improper where the evidence fails to show, ***on a classwide basis***, that employees missed rest breaks *as a result of a supervisor's coercion* as opposed to the employees' choice to forgo such breaks.  In *Gonzalez*, 2012 WL 5473764, at *4, the court denied certification of a rest break claim stating:

> [Plaintiffs] have not provided any classwide evidence that precludes the possibility that some employees took rest breaks, and some employees voluntarily declined to take their rest breaks . . . individual questions will predominate.

Here, the evidence demonstrates that BB's rest break policy complies with California law.  *See* SE 19.  Techs knew they were supposed to take their rest breaks.  *See* SE 19.  They were not required to keep their phones on, to answer their phones, or to check email on a classwide basis.  *See* SE 21.  Many Techs took their breaks every day (*see* SE 44), and some

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

20

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

voluntarily chose not to take them on occasion without coercion (*see* SE 46).   No evidence suggests that BB coerced or forced any Tech to forgo a break, let alone that all Techs were forced to forgo breaks on a classwide basis.  Whether a rest break violation occurred would require a day-by-day, person-by-person individual analysis of (a) on what days, if any, a Tech believes he/she was prohibited from taking a rest; (b) the circumstances that caused this belief; and (c) the manager's knowledge of these circumstances.  Thus, individual issues predominate.

### 4.    Individual Issues Predominate on Plaintiff's Commute Claim

In *Morillion*, the court held that a ***mandatory*** bus commute constituted compensable time. *Morillion*, at 586.  In *Rutti*, the court held that commute time was compensable where: (1) employees *were required* to drive the company vehicle; (2) employees could *not* stop for personal errands; (3) employees were required to drive *directly* from the job home; and (4) employees could *not* use cell phones while driving.  *Rutti*, 596 F.3d at 1061-62.  Cases make clear that commute time is only compensable, if the employer ***requires*** the employee to commute in a certain way.  In *Overton*, plaintiffs sought pay for time spent taking a shuttle to their jobs at Disneyland.  Judgment for Disney was affirmed because Disney did not *require* employees to use shuttles.  The court held that even if 90% of employees used Disney shuttles to commute, the fact that employees were not required to use shuttles rendered the time not sufficiently controlled by the employer to be paid.  *Overton*, 136 Cal. App. 4th at 271.  In *Alcantar*, the court denied certification of a commute time claim by service technicians who drove their company vans home, because plaintiff failed to show that employees were required to take vans home on a classwide basis.  *Alcantar*, 2012 WL 5946129, at *3-*4.  The court then granted summary judgment for the employer because the plaintiff failed to show that he was required to take his van home.  *Alcantar v. Hobart Serv.,* 2012 WL 6539547, at *3 (2012).

Here, many Techs knew that they did not need to take their vans home, but did so for their convenience.  *See* SE 29.  Further, the policies state that taking a van home is voluntary. And many Techs do not take their vans home.  *See* SE 28.  Further, many Techs confirm that they knew they were permitted to engage in incidental errands on their way home (*see* SE 30) and did, in fact, engage in such errands (*see* SE 30).

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

21

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

Thus, certification must be denied for one of two alternative reasons:  either the commute time is not compensable as a matter of law and thus, Plaintiff offers no evidence of a common *illegal* policy, or, alternatively, whether commute time is compensable requires individualized analysis.  On one hand, if Plaintiff concedes the existence of uniform policies that Techs are *not required* to take their vans home and *are permitted* to run incidental errands, then commute time is not compensable under *Overton,* and Plaintiff no evidence of an illegal policy exists.  *See Santos v. Vitas Healthcare Corp. of Cal.*, 2011 WL 2803370, at *4 (Cal. Ct. App. 2011) (denying certification where facts showed that employer did not control commute time).  If, on the other hand, Plaintiff contends that he and others were required to take their vans home and were prevented from running incidental errands, then the issues are individual to each Tech. Many Techs do not take their vans home and others acknowledge that they could have left their van at a BB store, but elected not to.  Further, many Techs knew they could and did run incidental errands during their commutes.

Moreover, the facts show that Techs were, in fact, often paid for their commutes home. Plaintiff sometimes added his commute time into his paid UPS visit or Complete Route & Send time.  *See* SE 31.  Some managers told Techs to record commute time as paid Complete Route and Send time.  *See* SE 31.  Sometimes managers made sure that Techs were paid.  *See* SE 31. Thus, whether a Tech was paid for commute time cannot be decided on a classwide basis; one would have to analyze each Route Sheet and wage statement to determine whether commute time was paid on any particular day.  The order denying certification in *Bryant v. Service Corp. Int'l*, 2011 WL 855815, *11 (N.D. Cal. 2011), explains why this issue precludes certification:

> Third, [employer] points to evidence that some employees actually were compensated for the time spent driving to pick up the company car. . . . Such employees would not be members of the class, but that determination could not be made absent individualized analysis.

Whether BB has liability to each discrete Tech cannot be decided on a classwide basis. Predominant individual issues include:  (1) whether a Tech was actually compensated for the commute home; (2) what circumstances, if any, required the Tech to take his BB van home every night despite the policy that taking the van home was voluntary; and (3) whether the Tech could

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

22

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

1    run errands during his/her commute.  These individual issues overwhelm any common ones.

2             **5.      Plaintiff's "Labor Budget" or Incentives Theory Is Fatally Flawed**

3             Plaintiff attempts to gloss over the predominate individual issues inherent in his claims by

4    asserting that labor budgets and desire to achieve productivity targets caused employees to

5    work off-the-clock, work during meal breaks, and skip rest breaks.  Courts consistently reject

6    this theory, recognizing that it does not eliminate the need for individual inquiries.  *See, e.g.,*

7    *Ordonez*, 2013 WL 210223, at *2-*3 (declining to certify based on theory that employer's zeal

8    to minimize labor costs resulted in off-the-clock work, missed meals, and no rests); *Mateo v.*

9    *V.F. Corp.*, 2009 WL 3561539, at *7 (N.D. Cal. 2009); *Brown*, 249 F.R.D. at 582-83; *Kenny v.*

10   *Supercuts, Inc.*, 252 F.R.D. 641, 646 (N.D. Cal. 2008); *Velasquez*, 266 F.R.D. at 428-31.

11            In *Koike*, an off-the-clock case, plaintiff argued that common questions predominated

12   because employees needed to work overtime, labor budgets prevented overtime, performance

13   targets and bonuses incentivized managers to limit overtime, and flawed labor scheduling did not

14   allow employees time to perform all their tasks.  *Koike*, 2008 WL 7796650, at *7.  In affirming

15   denial of certification, the Ninth Circuit agreed "that business pressures exist which might lead

16   [employees] to work off-the-clock," but there would still be a need for "individualized factual

17   determinations . . . to determine whether class members did in fact engage in off-the-clock work

18   and whether Starbucks had actual or constructive knowledge of off-the-clock work performed."

19   *Koike v. Starbucks Corp.*, 378 Fed. Appx. 659, 661 (9th Cir. 2010).

20            Here, as explained above, there is no evidence of common practices by all Techs to

21   routinely work off-the-clock, work while clocked out for a meal, or refrain from taking a rest

22   break.  Thus, the purported common policies cited by Plaintiff cannot support certification.

23            **6.      Cell Phone Practices Cannot Support Certification**

24             Plaintiff wrongly contends that Techs did not receive breaks because BB's required

25   them to leave phones on.  First, evidence reveals the absence of such a classwide policy.

26   Certification requires a "uniform policy consistently applied to a group of employees [that]

27   is in violation of the wage and hour laws."  *Brinker*, 54 Cal. 4th at 1033.  The allegation of

28   such a policy is not enough: "[t]o the extent the propriety of certification depends upon

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

23

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

1    disputed threshold legal or factual questions, a court may, and indeed must, resolve them."

2    *Id.* at 1025.  Here, many Techs did not leave their phones on or answer them during breaks.

3    SE 42, 45.  Thus, no uniform practice of the type suggested by Plaintiff exists.

4            Second, even if BB did require Techs to leave their phones on, it would not transform

5    break time into work time.  Rather, such on-call time is only work time if other restrictions

6    render the employee unable to engage in personal activities.  *See e.g. Gomez v. Lincare, Inc.*

7    173 Cal. App. 4th 508, 523 (2009).  Factors used for this analysis include (1) geographic

8    restrictions on movement; (2) frequency of calls; (3) length of fixed response time; and (4)

9    engagement in personal activities.  *Id.* at 524.   Analysis of these factors is inherently fact-

10   intensive and individual to each Tech.  In a similar case, *Nelson v. Southern Cal. Gas Co.*,

11   2013 WL 2358670 (Cal.App. 2013), plaintiffs brought a meal period claim on behalf of

12   field engineers who drove company vehicles.  Plaintiffs asserted that company policies

13   exerted such control over breaks that they were not provided.  *Id.* at *1.  Among a litany of

14   policies that allegedly restricted break time was a requirement that plaintiffs be available to

15   respond to emergencies.  *Id.* at *3.  The trial court denied certification based on this policy:

16           The evidence demonstrates that it was Defendant's policy for field employees
             to receive messages from dispatch, even during a break.  . . . [T]here is not a
17           set time in which employees were required to respond.  . . This evidence
             indicates that whether a class member actually responded to a message . . .
18           cannot be determined on a classwide basis . . . A variety of factors could
             influence whether a class member responded . . . Plaintiffs are unable to
19           demonstrate how these factors can be evaluated for all class members.

20   RJN A.  The Court of Appeal affirmed.  *Nelson*, 2013 WL 2358670 at *12.  Thus, being

21   available to work during a break cannot convert break time to work time.  Also, since rest

22   breaks are paid time, employees need not be relieved of all duty (*e.g.* they can be restricted

23   to the work site).  RJN, Ex. E.  Thus, remaining on-call is appropriate during a rest break

24           Leaving a phone on is not enough to establish the absence of a meal or rest break.

25   Rather, each Tech would have to show that he/she was called so often that he/she could not

26   use the meal or rest period for his/her own purposes, an inherently individual assessment.

27   **D.      Plaintiff Cannot Establish Rule 23(b)(3) Superiority**

28           Under Rule 23(b)(3), Plaintiff must show "a suitable and realistic plan for trial of the class

Morgan, Lewis
& Bockius LLP
Attorneys at Law
Irvine

DB2/ 24196162.3

24

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT

claims." *Zinser*, 253 F.3d at 1198.  That plan cannot involve procedural tools that deprive a defendant of its right to assert its defenses as to each class member.  *See, e.g.*, *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 236 n.8 (9th Cir. 1974).  Here, numerous individual decisions would need to be made to determine liability as to each putative class member, and courts have routinely held that the necessity for a mini-trial negates Rule 23(b)(3) superiority.  *See, e.g., Forrand v. Federal Express Corp.*, 2009 WL 648966, at *4 (C.D. Cal. 2009); *Goldsby v. Adecco, Inc.*, 2009 WL 262216, at *4-*5 (N.D. Cal. 2009).

In addition, BB has a due process right to establish the absence of liability as to each Tech. *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("[W]here important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998) (holding defendant was improperly "forced to defend against a fictional composite"); *Mendoza v. Home Depot, USA, Inc.*, 2010 WL 424679, at *9-*10 (C.D. Cal. 2010).  *Dukes* recognizes a right to "individualized determinations of each employee's eligibility for back pay," explaining that "a class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims." *Dukes*, 131 S. Ct. at 2546.  Plaintiff has not presented a manageable trial plan that preserves BB's right to establish its defense as to each Tech, while proving liability on a class basis.  Hence, Plaintiff has failed to prove Rule 23(b)(3) superiority.

Dated:  June 26, 2013

MORGAN, LEWIS & BOCKIUS LLP

By /s/ Barbara J. Miller
Barbara J. Miller
Attorneys for Defendant

MORGAN, LEWIS
& BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB2/ 24196162.3

MEMO OF POINTS & AUTHORITIES ISO
OPPOSITION TO MTN FOR CLASS CERT